UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-

PLUTARCO ANGULO-AGUIRRE,
RAFAEL RODRIGUEZ, ANGEL DIAZ,
VICTOR DIAZ and JORGE CEDENO,

    Defendants.

------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/12/08
```

S4 07 Cr. 387 (CM)

DECISION AND ORDER ON TRIAL *IN LIMINE* MOTIONS

McMahon, J.:

Defendants Plutarco Angulo-Aguirre, Rafael Rodriguez, Angel Diaz, Victor Diaz, and Jorge Cedeno are charged in an eight-count superseding indictment (S4 07 Cr. 387), with *inter alia* conspiracy to commit kidnaping and robbery of truck drivers.

The Government has notified the defendants and informed the Court that the Government may seek to introduce at trial evidence of other charged and uncharged crimes, wrongs, or acts committed by the defendants. (See Govt Letter 4/15/08). The Government asserts various theories why this evidence should be admitted at trial, including: (1) as direct evidence of the charges in the Indictment, (a) because it arose out of the same transaction or series of transaction as the charged offenses, (b) because it is inextricably intertwined with the evidence regarding the charged offenses, and (c) because it is necessary to complete the story of the crimes on trial; (2) as Rule 404(b) evidence, to show (a) the development of the "criminal relationship" and "mutual trust" among the co-conspirators and (b) the defendants' motive, opportunity, intent, preparation, plan, knowledge, and/or absence of mistake or accident with respect to the charges in the Indictment; and (3) as

impeachment evidence, pursuant to Rule 609. Id; see also Govt Reply letter 5/6/08),

The defendants have filed separate motions opposing the admission of this evidence. In addition to opposing the admission of this evidence, Angel Diaz renews his severance motion on the ground that he is not specifically mentioned in any of the uncharged crimes. In addition to filing an *in limine* motion, Angulo-Aguirre moves to preclude admission of co-conspirator statements, for disclosure of Brady, Giglio and Jencks Act material, and for disclosure of informant-related information.

The Government has filed its own *in limine* motion, asking the Court to preclude the defendants from: (1) cross-examining two victim-witnesses about the results of a polygraph examination; (2) cross-examining another victim-witness about a prior armed robbery conviction; and (3) cross-examining a law enforcement witness about a prior adverse credibility finding.

Evidence of Uncharged Crimes

The Government seeks to introduce evidence regarding numerous other truck thefts, warehouse burglaries, and attempted hijackings that were committed by defendants Angulo-Aguirre, Victor Diaz, Rodriguez, and Cedeno. Defendants oppose the introduction of this evidence, primarily because they allege that the Government has not sufficiently explained why the evidence is relevant, inextricably intertwined with the charged crimes, or necessary as background evidence, so as to justify its admission under the governing legal standards.

According to the Government, beginning in approximately July 2006, defendants embarked on a crime spree that lasted approximately six months. During that time, defendants committed the three charged armed robberies/kidnappings. Both before and after committing the charged crimes, defendants allegedly worked together as a crew to commit other crimes similar to the charged crimes.

They stole numerous trucks, several of which contained perfume and cosmetic products, which were also in two of the trucks whose hijacking is the subject of the Indictment. They burglarized warehouses, including the perfume warehouse from which the first hijacked truck departed. Stolen goods were allegedly sold to several of the same fences as were the goods stolen during the charged crimes. They drove around the tri-state area on multiple occasions, armed with guns and flex cuffs, following trucks with the intention to overtake and rob them.

The Government argues that the uncharged crimes cannot be separated from the story of the crimes on trial, because they provide background to the allegations in the indictment and fill in the blanks in the Government's story. The Government argues that jury will not understand how this group of defendants came to operate with and trust each other unless it is permitted to hear about the thefts, burglaries, and attempted hijackings they committed together, both before and after the charged crimes were committed. It argues that the uncharged acts are part of a series of transactions encompassing the charged crimes. And it claims that the jury will not understand why these defendants knew how to commit the charged crimes unless they know that this group of defendants had been stealing trucks and committing burglaries together both before and after the charged crimes— which I take to be some variant on "modus operandi" argument. (Govt Reply at 2).

The Court is satisfied that the Government has sufficiently explained why the evidence is relevant, inextricably intertwined with the charged crimes, or necessary as background evidence, to justify its admission. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000). Moreover, the evidence of uncharged crimes is separately admissible as background evidence under Rule 404(b) because it helps to explain the development of the "criminal relationship" and "mutual trust" among the co-conspirators. United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996).

The defendant's motion to exclude this 404(b) evidence is denied.

Angel Diaz's Severance Motion

Angel Diaz has renewed his motion for severance on the ground that he is not mentioned in any of the uncharged crimes the Government has proffered and would be prejudiced by its introduction. In his previous severance motion – a motion made and decided prior to the Government's notice that it would seek to introduce the proposed uncharged conduct – Angel Diaz argued that severance was warranted because he was not named in all the counts of the indictment.

In denying the initial motion, the Court concluded that Angel Diaz was implicated in the bulk of the criminal conduct charged in the indictment, and that severance would result in a waste of judicial resources. The Court further noted that any prejudicial spillover that might result from the presentation of evidence against other defendants could be cured by limiting instructions to the jury. See United States v. Plutarco Angulo-Aguirre et al., No. S4 07 Cr. 387 (CM), Mar. 14, 2008 Decision and Order, at *8.

The Court is satisfied that any prejudice that may inure to defendant from evidence of his co-defendants' uncharged criminal conduct can also be cured by a limiting instruction. Indeed, a limiting instruction in this situation would be particularly easy for the jury to follow, since it will pertain to only one of the five defendants.

Evidence of Prior Convictions and Arrests

The Government seeks to introduce various prior arrests and convictions of each of the defendants, pursuant to Rules 404(b) and 609. Defendants each move to preclude this evidence.

*Rafael Rodriguez*

Rodriguez opposes introduction of his 1996 prior conviction for criminal possession of a

-4-

weapon in the third degree by asserting that he "will raise no claim of knowledge, accident, or mistake with respect to the issues of the use of weapons." (Rinaldo Letter, 5/2/08 at 3.) His defense at trial apparently will be that he did not commit the charged crimes at all. (See id.)

According to the Government, Rodriguez was arrested in Manhattan for murder, criminal use of a firearm, assault, criminal possession of a weapon, and reckless endangerment, in conjunction with a shootout that occurred on the street during which Rodriguez fired numerous shots from a Mac-11 pistol, seriously injuring five people, including three innocent bystanders. Rodriguez subsequently pleaded guilty to criminal possession of a weapon in the third degree, and was sentenced to 42 months' imprisonment.

The Government argues that, even if Rodriguez is prepared clearly and unequivocally to remove the issues of intent, knowledge, and absence of mistake or accident from the case with respect to charged crimes, which he has done, see Rinaldo letter, supra, the Government is entitled to prove, through the introduction of the defendant's prior firearms conviction, that the defendant had access to firearms and was familiar with how to operate them.

Rodriguez 1996 conviction sheds little, if any, light on crimes charged in the indictment and even less light on whether defendant had access to guns ten years latter. I will grant that the convictions would tend to show that Rodriguez knows how to fire a gun. However, the real effect of this evidence would be to let the jurors know that defendant was convicted of using guns twelve years ago to commit a terrible crime. The only logical inference one can possibly draw from this is propensity. The value of this evidence to show opportunity is outweighed by the danger of unfair prejudice.

Evidence of Rodriguez's 1996 conviction will be excluded, pursuant to Rule 404.

Should defendant testify, his 1996 felony weapons possession conviction and his 1996 felony conviction for criminal possession of a controlled substance in the third degree will be admissible for impeachment purposes. Even though the convictions are more than ten years old, they are admissible because defendant was incarcerated for those convictions during the 10-year period prescribed by Rule 609(b).

*Angel Diaz*

Angel Diaz opposes the introduction of his prior convictions (of which there are many), asserting that "[i]t is clear that [Angel Diaz] does not intend to argue lack of knowledge, intent, opportunity, or motive in connection with his charged conduct." (Fufidio Letter, 5/2/08, at 3.) The Government's argument with respect to Angel Diaz is identical to that set forth above with respect to Rodriguez: the issue of opportunity simply cannot be removed from the case short of a stipulation in which Angel Diaz acknowledges both access to firearms and knowledge of how to use them.

Angel Diaz's criminal history is shocking. The Government seeks to introduce a mere sampling of defendant's full criminal history: a 1991 conviction for criminal possession of a weapon in the fourth degree (sentence- six months' imprisonment); a 1991 conviction for criminal possession of a loaded firearm in the third degree (sentence- one year imprisonment); a 1991 conviction for robbery in the second degree, grand larceny in the fourth degree, criminal possession of stolen property in the fourth degree, and unauthorized use of a vehicle (sentence- two to six years' imprisonment on the robbery, 16 months' to four years' imprisonment on the grand larceny and stolen property charges, and to one year imprisonment on the unauthorized use of a vehicle charge; a 1991 conviction for criminal possession of a weapon in the third degree (sentence- to one year

-6-

imprisonment); a1992 conviction for attempted murder (sentence- two to six years' imprisonment); a 2001 conviction for grand larceny in the third degree (sentence- 42 months' to seven years' imprisonment; and a 2006 conviction after trial of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, assault in the second degree, and reckless endangerment in the first degree (sentence- fifteen years' imprisonment), which defendant is currently serving..

These convictions, and the underlying facts associated with the convictions, paint a portrait of a violent career criminal, who uses guns to commit his crimes. For that very reason, fairness augurs in favor of exclusion under Rule 404. I believe a jurors in possession of this evidence would find it hard to abide a limiting instruction that they are not to convict Angel Diaz of the robbery and kidnaping charges in indictment based on the fact that he has been convicted of numerous violent crimes with guns in the past. The probative value of these convictions – to show that defendant "had access to firearms and was familiar with how to operate them"– is outweighed by the danger of unfair prejudice. Prior convictions do not tend to show that Angel Diaz had access to guns when the charged crimes were committed, and the jury will learn of his familiarity with guns from the 404(b) evidence that is being admitted.

Should Angel Diaz testify, his 1999 prior felony federal conviction for passing and possession of counterfeit United States obligations; his 2001 prior felony conviction for grand larceny; and his 2006 prior felony convictions for criminal possession of a weapon in the second and third degrees, assault in the second degree, and reckless endangerment in the first degree, are each admissible for impeachment purposes, because those convictions occurred within the 10-year period prescribed by Rule 609(b).

*Victor Diaz & Jorge Cedeno*

The Government seeks to introduce evidence about two of Victor Diaz's convictions: a 1995 conviction in New Jersey for "theft in the third degree," in connection with an incident in which Diaz and several others stole merchandise from a Mandee's delivery truck (Sentence- four years' probation), and (2) a 2003 conviction in Miami for "grand theft in the third of an unoccupied conveyance," in connection with his theft of a computer from a Federal Express truck (Sentence- one year of probation).

The Government seeks to introduce evidence about three of Cedeno's convictions: (1) a 1995 conviction for "criminal possession of a weapon in he third degree, in connection with an incident in which he was accused by a complaining witness of attempting to rob him with a firearm. Cedeno was found in possession of a loaded .38 caliber Smith and Wesson revolver (Sentence- one year imprisonment); (2) a 1996 conviction for "criminal possession of stolen property in the fifth degree," in connection with an incident in which he was found to be in possession of an NYPD bulletproof vest (Sentence- conditional discharge and five days' community service); and (3) a 1997 conviction for "robbery first degree," in connection with an incident in which he attempted to forcibly take money from the victims, using a firearm (Sentence- ten years' imprisonment).

Both Victor Diaz and Cedeno oppose the introduction of their prior convictions, stating, "A defendant's assertion that he did not do the crime at all does not place intent in issue, . . . nor does it raise any issue with respect to knowledge, accident, or mistake." (Burke Letter, 5/2/08 at 5). This formalistic language is not a clear an unequivocal statement that these defendants will not inject these issues into the case. At the conference next week, I will ask for a more specific statement of defendant's intent.

If Victor Diaz unequivocally states (which he has not yet done) that he does not intend to put the classic 404(b) issues in issue, the Government will be precluded from introducing this evidence on its direct case. Defendant has five days to make his intentions as clear as the other defendants have.

If Victor Diaz elects to testify, his 2003 felony conviction for grand theft in the third degree is admissible for impeachment purposes, because that conviction is within the 10-year period prescribed by Rule 609(b).

Similarly, Cedeno's prior convictions will be off limits to the Government on its direct case, provided Cedeno unequivocally states that he does not intend to put the classic 404(b) issues in issue. The value of Cedeno's past convictions to show defendant "had access to guns" in the past, or that "he knew how to use them," is outweighed by the danger that a jury may decide defendant is guilty of the present robbery charges because he was proven to be involved in robberies in the past.

If Cedeno testifies, his 1997 felony conviction for robbery in the first degree will come in for impeachment purposes because Cedeno was incarcerated for that convictions during the 10-year period prescribed by Rule 609(b).

*Plutarco Angulo-Aguirre*

The Government seeks to introduce evidence of two of Angulo-Aguirre's prior convictions (1) A 1995 arrest for burglary of a Federal Express truck and (2) a 1997 arrest for grand larceny in connection with a Federal Express van. The Government argues that these prior convictions are directly relevant to show that Angulo-Aguirre had the requisite knowledge, intent, and opportunity to commit the charged crimes.

Unlike his codefendants, Angulo-Aguirre does not represent that his defense will be that

"he did not do the crime," thereby removing the issues of knowledge, accident, or mistake. Indeed, Angulo-Aguirre's motion does not address the admissibility of his prior convictions on 404(b) grounds. His sole argument is that his convictions are not admissible as impeachment evidence under rule 609, because they are not probative of truthfulness. That argument he wins – not necessarily because the convictions are not probative of truthfulness, but because the convictions are more than ten years old.

Unless, defendant makes an unequivocal statement at the final pretrial conference that he will not be placing any of the 404(b) issues into the case, the Government motion to introduce this evidence on its direct case will be granted.

### Additional Motions by Angulo-Aguirre

In addition to his *in limine* motion, Angulo-Aguirre asks the Court: (1) to preclude admission of co-conspirator statements; (2) for disclosure of Brady, Giglio and Jencks Act material; (3) and for disclosure of informant-related information. (See Braverman Letter, 5/2/08, at 6-24.) Angulo-Aguirre already made these motions, among others, by his previous counsel in his brief of August 22, 2007. (See Angulo-Aguirre Mot., 8/22/08, at 15-19.) The Government responded to those motions by its briefs of September 6, 2007 and February 26, 2008 and the Court denied the motions by its March 14, 2008 Decision and Order. These motions have been resolved and the Court will not entertain these motions a second time.

Angulo-Aguirre also asks that the Court permit individualized voir dire by defense counsel. (See Braverman Letter, 5/2/08, at 7-8). The motion is denied. The Court will conduct the voir dire. Counsel will be given an opportunity to submit proposed voir dire questions, in writing, prior to jury selection.

Government's *in limine* Motions

The Government moves *in limine* to preclude the defendants from: (1) cross-examining two victim-witnesses about the results of a polygraph examination; (2) cross-examining another victim-witness about a prior armed robbery conviction; and (3) cross-examining a law enforcement witness about a prior adverse credibility finding.

*Polygraph Evidence*

The Government moves to preclude the defense from cross-examining Victim-1 and Victim-2 about results of polygraph examinations by the F.B.I.

According to the Government, during the polygraph examinations, Victim-1 and Victim-2 were each asked: "Did you plan with anyone to steal that perfume?" and "Do you know for sure who stole that perfume?" Victim-1 and Victim-2 each answered "no" to both questions. The polygraph examiner concluded that Victim-1's and Victim-2's physiological responses while answering the foregoing questions were "indicative of deception."

Rule 403 of the Federal Rules of Evidence allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Both the United States Supreme Court and the Second Circuit Court of Appeals have repeatedly upheld the exclusion of polygraph evidence because of its unreliability, its potential to confuse the issues and mislead the jury, and the danger of unfair prejudice posed by its admission. See, e.g., United States v. Scheffer, 523 U.S. 303, 309 (1998); United States v. Kwong, 69 F.3d 663, 668 (2d Cir.1995); United States v. Rea, 958 F.2d 1206, 1224 (2d Cir.1992).

Apart from the general skepticism courts have about polygraph evidence, there is a good reason in this case not to transgress the general rule that polygraph evidence is inadmissible. The Government represents that several participants in the robbery will testify at trial that Victim-1 and Victim-2 were merely victims, not co-conspirators or participants. This direct testimony that these two victims were indeed victims puts into question the reliability of the polygraph examiner's amorphous conclusion that their responses were "indicative of deception."

The Government's motion to preclude cross examination of the polygraph evidence is granted.

*Witness's Conviction*

The Government respectfully moves to preclude the defense from cross-examining Victim-4 about his prior conviction for armed robbery in 1982. According to the Government, Victim-4's conviction for armed robbery occurred in 1982, more than 25 years ago, when Victim-4 was 19 years old. That arrest is inadmissable for impeachment purposes because it occurred outside the ten-year period prescribed by Rule 609(b).

The Government's motion preclude the defense from cross-examining Victim-4 about his prior conviction is granted.

*Law Enforcement Witness Prior Adverse Credibility Finding*

The Government moves to preclude the defense from cross-examining one of its witnesses, Detective Goldrick, about a prior finding by the Appellate Division of the Supreme Court of the State of New York, that the detective "tailored" his testimony at a suppression hearing in order to avoid suppression.

Eighteen years ago, the Appellate Division found that Goldrick, then a patrol officer,

-12-

"tailored" his testimony at a suppression hearing in order to avoid suppression of evidence that he had discovered during a traffic stop. See People v. Miret-Gonzalez, 159 A.D.2d 647, 649 (N.Y. App. Div. 1990). The Appellate Division reached this conclusion even though the Supreme Court Justice who had actually heard Goldrick's testimony credited that testimony and denied the defendant's suppression motion. (Id.)

The Government states that it expects Detective Goldrick to testify at trial that on January 3, 2007, he participated in the arrest of defendant Rafael Rodriguez and co-conspirator Jorge Flores in New Jersey, and that during the arrest he discovered (a) a knapsack in the trunk of a car in which Flores and Rodriguez had been riding that contained, among other things, two firearms and flexible plastic ties like those used in the charged robberies, and (b) a bulletproof vest on Rodriguez's person.

The Appellate Division's adverse credibility finding reflects only a finding that Detective Goldrick "lacked credibility as to his testimony in that case, not that he was lacking in veracity generally." See United States v. Cruz, 894 F.2d 41 (2d Cir. 1990). Detective Goldrick will not be testifying before the jury about the constitutionality of a search, the issue before the Appellate Division. In the absence of any connection between the finding of tailoring in the case before the Appellate Division and his purported testimony in the case at bar, it cannot be said that Appellate Divisions finding is relevant to the detectives testimony in the present case.[1] See Cruz, 894 F.2d at 42-43.

---

[1] Detective Goldrick is expected to testify at a supplemental suppression hearing granted defendant Rodriguez. The subject of the hearing is to determine whether the detective lawfully searched the defendant, who was wearing a bullet proof vest. Since the instant suppression hearing is similar in nature to the proceeding where the Appellate Division found the detective to have tailored his testimony, the Court will allow Rodriguez's attorney to cross examine the detective on that point-- especially since I already know about it.

-13-

The Government's motion to preclude cross examination of Detective Goldrick about the Appellate Divisions prior adverse credibility finding is granted.

This constitutes the decision and order of the Court.

May 9, 2008

*[signature]*

U.S.D.J.

BY FAX TO:

**Nola Breglio Heller**
U.S. Attorney's Office, White Plains
300 Quarropas Street
White Plains, NY 10601
Fax: (914)682-3392

**Michael Frederick Keesee**
Michael F. Keesee
327 Irving Avenue
Port Chester, NY 10573
Fax: 914 937-3950

**Paul Peter Rinaldo**
Grossman & Rinaldo
108-18 Queens Boulevard, 8th Floor
Forest Hills, NY 11375
Fax: (718) 793-0894

**George Edward Fufidio, Jr.**
Mancuso Rubin & Fufidio
1 North Broadway
White Plains, NY 10601
Fax: (914)-686-3478

**Michael Kennedy Burke**
Burke, Miele & Golden, LLP
100 Washington Avenue, Post Office Box 397
Suffern, NY 10901
Fax: (845) 294-7673

**Theodore Samuel Green**
Green & Seifter, Attorneys, PLLC
One Lincoln Center, Suite 900, 110 W. Fayette Street
Syracuse, NY 13202
Fax: (914) 948-8730

**Clinton Warren Calhoun**
Briccetti, Calhoun and Lawrence
81 Main Street
White Plains, NY 10601
Fax: 914-946-5906